IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NINA M. HARBAUGH,** *Administrator of the Estate of Brittany Ann Harbaugh, deceased,*<br>*Plaintiff,*<br><br>v.<br><br>**BUCKS COUNTY, PRIMECARE MEDICAL, INC., MEDICAL JOHN DOES 1-10, and CORRECTIONAL OFFICERS JOHN DOES 1-10,**<br>*Defendants.* | **CIVIL ACTION**<br><br>**NO. 20-1685** |

**<u>MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**Baylson, J.**                                                                                                                **November 4, 2022**

      This civil rights case arises from the tragic death of Brittany Ann Harbaugh on October 1, 2018, at Bucks County Correctional Facility ("BCCF"). Ms. Harbaugh died from a seizure that was the apparent result of opiate withdrawal. On March 31, 2020, Plaintiff commenced the instant action as the administrator of Ms. Harbaugh's estate against Bucks County, Prime Care Medical ("PCM"),[1] and unnamed medical and correctional officers at BCCF. Among others, this action pursues claims against Bucks County under 42 U.S.C. § 1983 and <u>Monell v. Department of Social Services of City of New York</u>, alleging municipal violations of Ms. Harbaugh's rights under the Eighth and Fourteenth Amendments of the United States Constitution. Specifically, Plaintiff alleges that Bucks County was deliberately indifferent to Ms. Harbaugh's serious medical needs, which contributed to her death. In the instant motion, Bucks County alone seeks summary judgment on all claims against it. For the following reasons, the motion will be denied.

---

[1]     PCM is the provider of medical services at BCCF.

I.      **Factual Background and Procedural History**[2]

On September 26, 2018, Brittany Ann Harbaugh arrived at BCCF, where she was identified as an individual undergoing opiate withdrawal. See Pl.'s SUF ¶ 1. Medical representatives of PCM entered orders for her to take an opiate withdrawal taper of several medications. See id. ¶ 3. This taper did not include any of the FDA approved medications for the treatment of opiate use disorder and opiate withdrawal. See id. ¶ 3. PCM employees also placed Ms. Harbaugh on a Level III watch upon her arrival. See Def.'s SUF ¶ 29; Pl.'s Resp. to Def.'s SUF ¶ 29. Level III watch requires correctional officers to observe inmates at thirty (30) minute intervals and log their observations. See Def.'s SUF ¶ 33; Pl.'s Resp. to Def.'s SUF ¶ 33. However, correctional officers performed rounds every thirty (30) minutes to observe all inmates, regardless of whether they were on medical watch. See Pl.'s SUF ¶ 24.

BCCF also relied on a monitoring program which required other inmates to monitor prisoners with serious health issues every fifteen (15) minutes. See Pl.'s SUF ¶¶ 5, 25. The 2017 Accreditation Update Report by the National Commission on Correctional Health Care noted multiple monitoring deficiencies resulting from BCCF's execution of this policy. See Pl.'s SUF ¶ 27. Several other inmates at BCCF had died from drug-related withdrawal in 2013, 2014, and 2018. See Pl.'s SUF ¶¶ 56, 62, 72. No documents were produced demonstrating that inmate monitors were trained to recognize the specific adverse symptoms of withdrawal. See Pl.'s SUF ¶ 29.

---

[2]     Unless otherwise indicated, all facts are derived from Defendant's Statement of Undisputed Facts (ECF 51) ("Def.'s SUF") in the light most favorable to Plaintiff, or from the facts stated in Plaintiff's related response (ECF 55) and statement of additional facts (ECF 55) ("Pl.'s SUF").

During her time at BCCF, medical records indicate that Ms. Harbaugh had an elevated heart rate and suffered from multiple symptoms of withdrawal, such as tremor, nausea, bone and joint aches, abnormal pupil size, restlessness, sweating, and elevated resting pulse rate. See Pl.'s SUF ¶¶ 6-10, 12-14. On at least two occasions, nurses noted that Ms. Harbaugh's elevated heart rate was abnormal. See Pl.'s SUF ¶¶ 9, 13. Ms. Harbaugh was not present to receive multiple doses of medication during her time at BCCF. See Pl.'s SUF ¶ 11.

On October 1, 2018, Ms. Harbaugh continued to experience symptoms. See Pl.'s SUF ¶¶ 13-14. BCCF's records are inconsistent as to Ms. Harbaugh's whereabouts during the evening. Medical records state that Ms. Harbaugh was evaluated at medical at 8:17 p.m. and 8:30 p.m. See Pl.'s SUF ¶ 16. Yet inmate monitor records state that she was in her bunk at those times. Id. ¶ 15.

At approximately 8:56 p.m., Ms. Harbaugh collapsed in her cell block, seizing and unresponsive. See Pl.'s SUF ¶ 19; Def.'s SUF ¶ 53; Pl.'s Resp. to SUF ¶ 53. Emergency medical staff arrived at approximately 9:07 p.m. and transported her to Doylestown Hospital at approximately 9:47 p.m. See Def.'s SUF ¶ 58; Pl.'s Resp. to Def.'s SUF ¶ 58. Ms. Harbaugh was pronounced dead at approximately 9:59 p.m. at Doylestown Hospital. See Def.'s SUF ¶ 59; Pl.'s Resp. to SUF ¶ 59.

Plaintiff filed the instant action on March 31, 2020, against Bucks County, PCM, and the individual John Doe defendants (ECF 1). On August 20, 2020, the Court granted a Partial Motion to Dismiss filed by PCM (ECF 18), which was unopposed by Plaintiff. Following discovery, Bucks County alone filed a Motion for Summary Judgment (ECF 51) on July 18, 2022. Plaintiff filed a response (ECF 55) on August 8, 2022, to which Defendant filed a reply (ECF 59) on August 15, 2022.

**II.     Legal Standard**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." Id. At summary judgment, the Court's role is "'to determine whether there is a genuine issue for trial,' it is 'not . . . to weigh the evidence and determine the truth of the matter.'" Peroza-Benitez v. Smith, 994 F.3d 157, 164 (3d Cir. 2021) (quoting Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019)). The Court should grant summary judgment only if, "constru[ing] all facts and inferences in favor of the nonmoving party," Santini v. Fuentes, 795 F.3d 410, 419 (3d Cir. 2015), "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

For the moving defendant to be held liable under § 1983, Plaintiff "must establish (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under § 1983 and acting under color of state law."[3] West v. Atkins, 487 U.S. 42, 48 (1988); see also Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

---

3       There is no dispute that Bucks County acts under color of state law here.

It is well established that deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A "serious" medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention", Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), or where the denial of treatment would result in the either "unnecessary and wanton infliction of pain," Estelle, 429 U.S. at 103, or a "life-long handicap or permanent loss." Lanzaro, 834 F.2d at 347. Deliberate indifference to serious medical needs is established when a party "recklessly disregard[s] a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009)

### III. Plaintiff's Monell Claim is Not Deficient as a Matter of Law

Defendant offers several legal arguments to suggest that Plaintiff's Monell claim is fatally deficient. First, Defendant argues that the absence of unconstitutional deliberate indifference by an individual officer precludes a finding of municipal liability. Second, Defendant argues that failing to identify a specific policymaker with final authority is fatal to the Monell claim. Third, Defendant claims that Plaintiff's constitutional claim against it is actually a negligence claim in disguise and therefore impermissible under § 1983. None of these arguments preclude Plaintiff's Monell claim.

#### A. Individual Official Liability is Not Required for Municipal Liability

Defendant argues that "because no [individual] state actor violated Harbaugh's Eighth Amendment rights, the direct claim against County fails as a matter of law."[4] Mot. at 8. Even if

---

[4] Plaintiff has not expressly conceded that no individual state actor was deliberately indifferent, although it has not proceeded against an individual defendant in its §1983 claim. But

5

this were true, for sake of argument, it would not be dispositive. The Third Circuit has explicitly held that an individual officer need not be liable to find liability against a municipality under Monell for a constitutional violation. Simmons v. City of Philadelphia, 947 F.2d 1042, 1058-64 (3d Cir. 1991). Defendant even cites Simmons as part of its argument, but Plaintiff correctly notes that the case cuts squarely the other way. Resp. at 9. Simmons remains good law in the Third Circuit.

Defendant cites Los Angeles v. Heller to support its argument but mischaracterizes its holding. Heller holds that:

> "[N]either Monell . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."

475 U.S. 796, 799 (1986). The crucial difference is that in Heller, no constitutional injury was suffered. There was only a policy that allowed a *potential* constitutional injury. Here, an *actual* constitutional injury allegedly occurred, even if the deliberate indifference was that of the municipality rather than a specific municipal officer. The Third Circuit makes the same distinction in Simmons as well. 947 F.2d at 1063 (distinguishing Heller and Williams v. Borough of W. Chester, Pa., 891 F.2d 458 (3d Cir. 1989), based on the absence of a present constitutional injury). Thus, Heller is inapplicable here and Simmons precludes Defendant's argument that an individual named defendant must also be liable.[5]

---

the Court need not determine whether Plaintiff actually contests this assertion to decide the motion.

5   The Seventh Circuit has also rejected the Defendant's expansive reading of Heller. See Thomas v. Cook Cnty. Sheriff's Dep't, 604 F.3d 293, 305 (7th Cir. 2010) ("The County, in this

6

### B. Plaintiff is Not Required to Identify a Specific Policymaker to Argue Failure to Train or Inadequacy Theories

Defendant also argues that "the failure to identify a decision-maker possessing final authority who acted with deliberate indifference is fatal to Plaintiff's municipal liability claim." Mot. at 9.  No such requirement exists.  Defendant relies on the Third Circuit's statement in Estate of Roman v. City of Newark that "[p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  914 F.3d 789, 798 (3d Cir. 2019) (internal citation and quotation marks omitted).  This rule does not go as far as Defendant suggests.  While it is clear that the decision-maker who created a policy must possess the requisite municipal authority, identifying the decision-maker is not the only way to establish that authority.  Circumstantial evidence can establish that a policy *must* have been made by a decision-maker possessing a municipality's final authority on the subject.  Where this can be clearly inferred, identifying the specific decision-maker is unnecessary.  See Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) ("We believe it is a more than reasonable inference to suppose that a system responsible for issuing 6,000 warrants a year would be the product of a decision maker's action or acquiescence."); see also Lischner v. Upper Darby Twp., No. CIV.A. 05-4546, 2007 WL 2032923 at *5 (E.D. Pa. July 11, 2007) ("Despite Dr. Lischner's failure to document a specific directive by an individual with final decision-making authority, the evidence in the record is sufficient to indisputably establish that it was the affirmative policy of Upper Darby on the day of the President's visit to enforce Drexelbrook's 'no-protesting' policy.")

---

case, appears to push for a rule that requires individual officer liability before a municipality can ever be held liable for damages under Monell.  This is an unreasonable extension of Heller.").

Here, it can be clearly inferred by BCCF's formal implementation of and undisputed adherence to the facility's monitoring policies – including the inmate monitoring policy – that they were official policies supported by a municipal decision maker's action or acquiescence. Defendant does not contend that they were not. Thus, identifying the specific policy maker is unnecessary.

Additionally, Plaintiff need only establish the fact that a policy was issued by a policymaker with final authority when advancing a Monell policy or custom theory. Plaintiff also advances "failure to train" and "failure to supervise" theories for Monell liability. Resp. at 4-5. As the Third Circuit recently observed, the requirements for these theories and a policy or custom theory are distinct:

> "Plaintiffs that proceed under a municipal policy or custom theory must make showings that are not required of those who proceed under a failure or inadequacy theory, and vice versa. Notably, an unconstitutional municipal policy or custom is necessary for the former theory, but not for the latter, failure or inadequacy theory. . . . . This difference can be significant because a plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject. . . . On the other hand, one whose claim is predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality."

Forrest v. Parry, 930 F.3d 93, 105-06 (3d Cir. 2019). Even if, for sake of argument, Plaintiff were required to identify a specific policymaker to establish an affirmative policy, this would not preclude Plaintiff from proceeding on failure to train and failure to supervise theories.

All in all, a jury is permitted to find Monell liability if Bucks County "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights" such that "[unnamed] policymaker[s,] can reasonably be said to have been deliberately

indifferent to the need." Parkell v. Danberg, 833 F.3d 313, 338 (3d Cir. 2016). Plaintiff need not identify the specific municipal policymaker to prove it.

### C. The § 1983 Claim is Legally Distinct from a Negligence Claim

Defendant argues that since no individual officer at BCCF was deliberately indifferent to Ms. Harbaugh's medical needs, the § 1983 claim against it is merely a negligence claim in disguise, which cannot be sustained under § 1983. See Reply at 3-4. Similarly, mere inadequate medical treatment is insufficient to sustain a § 1983 claim. See id. at 4. This argument mischaracterizes Plaintiff's claim under § 1983. As discussed above, Plaintiff alleges under that the municipality itself was deliberately indifferent and argues this based on facts on the record. See Resp. at 3-5. Defendant's conflation of the § 1983 claim against it and state law claims against PCM distorts Plaintiff's arguments.

### IV. Defendant Has Not Carried its Burden of Showing Absence of Material Fact

As the movant, Defendant must show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Defendant asserts that it is "undisputed that the County is not deliberately indifferent." Mot. at 9. This is clearly disputed. Defendant's only undisputed offerings on this point are that (1) Bucks County contracted with PCM for medical services and (2) medical screening and watch procedures existed at BCCF for patients with severe needs.[6] Id. But establishing that policies existed is not the same as proving the adequacy of those policies. A jury could find that the watches and screening were inadequate to serve the needs of inmates with serious medical issues and that Bucks County had notice of this fact. Thus, even without reaching Plaintiff's disputed facts, Defendant's factual argument is deficient on its face.

---

[6] The other factual assertions in Defendant's argument here are disputed by Plaintiff. The Court cannot credit factual assertions of the movant that are contested.

While the analysis could end there, the Court adds that Plaintiff has created a genuine issue of material fact. The Court construes all facts and inferences in favor of the non-moving party at the summary judgment stage. Santini v. Fuentes, 795 F.3d 410, 419 (3d Cir. 2015). Viewing the evidence in this light, Plaintiff has created a factual issue regarding the adequacy of the monitoring, training, and supervision policies at BCCF, sanctioned by Bucks County officials.[7] Inconsistencies between medical and inmate monitor records point to potential monitoring deficiencies; expert testimony suggests that BCCF's monitoring policies fell below the standard of care;[8] symptoms of severe withdrawal were repeatedly noted without action being taken; monitoring was conducted by a combination of inmates and correctional officers who were not trained to recognize specific symptoms of opiate withdrawal; Bucks County was arguably on notice of deficiencies in the medical monitoring at BCCF after (1) series of deaths of patients with serious medical needs;[9] and (2) a 2017 accreditation report noting deficiencies in the

---

[7] Defendant alleges that some assertions in Plaintiff's Statement of Undisputed Facts are bare statements of counsel. Reply at 1-2. A number of these are statements by Plaintiff asserting an absence of evidence on the record. See, e.g., Pl.'s SUF ¶¶ 18, 29, 34, 35. If Defendant wishes to rebut an assertion that evidence is not in the record, it does so by proving that the evidence exists, not asking Plaintiff to provide citations to absent materials.

Nevertheless, the Court reviewed the statements highlighted by Defendants and concluded that no fact dispositive to this motion was based solely on the assertion of counsel without foundation in the record.

[8] See Resp. Ex. 17; Resp. at 5, 7-8. Defendant also asserts that expert opinions with no personal knowledge and no basis in the record cannot be considered at the summary judgment stage. Reply at 2. But this rule only applies to highly speculative opinions that are not tied to the record. See Pa. Dental Ass'n. v. Med. Serv. Ass'n., 745 F.2d 248, 262 (3d Cir. 1984) (holding that in the context of summary judgment motions, the factual predicate of an expert's opinion must find some support in the record such that mere theoretical speculations will not create a genuine issue of fact). Plaintiff's expert report makes extensive use of the facts in the record. See Resp. Ex. 17. The report can therefore be considered at the summary judgment stage.

[9] Defendant argues that the prior incidents are "isolated incidents" that are inadequate as a matter of law to evidence a pattern of deaths related to an unconstitutional policy, custom, or practice. Reply at 7-8. But the authority cited by Plaintiff is not applicable here. The finding in Carroll v. Lancaster City, the case cited by Defendant, that the relevant incidents were isolated was highly fact specific. See 301 F. Supp. 3d 486, 507 (E.D. Pa. 2018) (Perkin, Mag. J.). And the facts here are clearly distinguishable: there have been more fatal incidents to put Bucks

execution of the inmate monitoring policies.  Based on these facts, a reasonable jury could find that Bucks County had a "reckless disregard" to a "substantial risk of serious harm" which resulted in Ms. Harbaugh's death.  <u>Giles</u>, 571 F.3d at 330.

"If a [municipality] cannot be held liable when its policymakers had notice of a problem and failed to act, then it is difficult to posit a set of facts on which a [municipality] could be held to have been deliberately indifferent." <u>Simmons</u>, 947 F.2d at 1091 (Sloviter, J., concurring). Viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could find that is what happened here.  Therefore, Defendant has failed to carry its burden.

## V.     Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is denied.  An appropriate order follows.

---

County on notice and there were known deficiencies in monitoring noted in the 2017 accreditation report.