## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NINA M. HARBAUGH, AS ADMINISTRATOR  :
of the ESTATE OF BRITTANY ANN        :
HARBAUGH, DEC'D                       :
                        Plaintiff,    :      **NO: 2:20-cv-01685-MMB**
        V.                            :
                                      :
COUNTY OF BUCKS, et al.               :
                                      :
                        Defendants.   :


### PLAINTIFF'S  UNOPPOSED MOTION PURSUANT TO LOCAL RULE 41.2 TO APPROVE SETTLEMENT AND DISTRIBUTION OF PROCEEDS

Plaintiff, Nina M. Harbaugh, as Administrators of the Estate of Brittany Ann Harbaugh, Deceased, by and through her undersigned counsel, Kline & Specter, P.C., respectfully request that this Honorable Court approve the proposed settlement and distribution of the above-captioned action for the sum of $1,000,000.00 (One Million Dollars), and in support thereof aver as follows:

1.      This action arises from the death of a 28-year-old mother of three who died a at the Bucks County Correctional Facility ["BCCF"].

2.      Plaintiff is the duly appointed Administrator of the Estate of Brittany Ann Harbaugh, deceased.  Letters of Administration were granted to Plaintiff on May 17, 2019, by the Register of Wills in the County of Delaware the Commonwealth of Pennsylvania.  *See* Letters of Administration attached hereto as Exhibit "A."

3.      Brittany Ann Harbaugh was born on September 19, 1990, and died on October 1, 2018, at 28 years of age.  Decedent did not have a will.

4.      A proposed settlement was reached with Defendant PrimeCare for a gross settlement of $1,000,000.00 (One Million Dollars) on November 7, 2022.

5.      Plaintiff's counsel is of the professional opinion that the proposed settlement is fair and reasonable in light of the facts of this case and the applicable law and rulings of the Court.

6.      There is no lien asserted by the Pennsylvania Department of Human Services ("DHS").  Plaintiff's counsel has advised DHS of the existence of this case and has received written confirmation that they have no lien on this recovery.  *See*, Letter from DHS dated June 1, 2020, attached hereto as Exhibit "B."

7.      Brittany Ann Harbaugh was not a Medicare beneficiary.

8.      A copy of this Motion was forwarded to Carolyn Dymond, Trust Valuation Specialist, Pennsylvania Department of Revenue, Bureau of Individual Taxes Inheritance Division, P.O. Box 280601, Harrisburg, Pennsylvania 17128, via e-mail requesting approval of the allocation recited herein between the wrongful death and survival actions.   The Department's response will be provided to the Court upon receipt.

9.      Brittany Ann Harbaugh's beneficiaries under the Wrongful Death Act, 42 Pa. C.S.A. §8301 are as follows:



10.      The costs of litigation, paid in advance by Plaintiff's counsel, are $50,774.00.  An itemized breakdown of the legal costs is attached hereto as Exhibit "C."   The itemized photocopying, express delivery services, and courier expenses were specific expenses of the litigation.  Expert costs were substantially incurred to provide expert reviewers and witnesses with the materials necessary to formulate their opinions and provide their reviews in a timely manner, and to prepare expert witnesses for trial. This proposed settlement was reached following extensive

discovery and production of expert reports and after the case was ready for trial. The specific costs identified are not attributable to this law firm's general overhead expenses. The expenditure of these costs played an integral role in securing the settlement result achieved in this action.

11.     Accordingly, Plaintiff's counsel respectfully requests reimbursement of these litigation costs and expenses in the amount $50,774.00.

12.     The fee agreement entered into by and between Plaintiffs and Kline & Specter, P.C. provided that counsel was to receive forty percent (40%) of the gross recovery plus reimbursement of costs.

13.     The attached Verification signed by Plaintiff, Nina M. Harbaugh, specifically approves of this settlement and the allocation of proceeds as set forth in this Motion.

14.     Accordingly, Plaintiff's counsel respectfully requests an attorneys' fee in the amount of $400,000.00, which represents 40% of the $1,000,000.00 settlement.

15.     The net proceeds of the settlement, after deduction of attorneys' fees, and costs is $549,225.00

16.     Plaintiff requests distribution of the net proceeds of the settlement, after deduction of costs and attorney fees, as follows:

|  |  |
|---|---|
| Wrongful Death Claim | 60% |
| Survival Claim | 40% |

17.     Plaintiffs request that the net settlement proceeds be distributed as follows:

Wrongful Death Act Proceeds (60%)

| To: | ███████████ | $109,845.00 |
|---|---|---|
|  | ███████████ | $109,845.00 |
|  | ███████████ | $109,845.00 |

3

Survival Act Proceeds (40%)

    To:    Nina M. Harbaugh,
             Administrators of the Estate of
             Brittany Ann Harbaugh, deceased          $ 219,691.00

18.     Pursuant to Pennsylvania Rule of Civil Procedure 2039, any funds payable to

███████████████████████████████████████████████, will be deposited in

an interest-bearing savings account or savings certificate in a federally insured bank or savings

institution not to exceed the insured amount, IN THE NAME OF THE MINOR, titled and

restricted that funds may not be withdrawn before minor attains majority or upon prior Order of

Court.

19.     The proposed apportionment of the settlement proceeds is appropriate under the

facts of this case.   While Pennsylvania law does not explicitly address settlement allocation

formulas, "Pennsylvania law clearly delineates the requirements to satisfy a wrongful death and

survival action award."  *Smith v. Sandals Resort Int'l, Ltd.*, 709 F. Supp. 2d 350, 358 (E.D. Pa.

Apr. 19, 2010).  Further, Pennsylvania prioritizes wrongful death claims over survival claims in

order to put the needs of the decedent's dependents over the estate beneficiaries.  *See, e.g.,*

*Krause v. B & O Railroad*, Pa. D & C.3d 458, 471 (C.P. 1983).

20.     The Wrongful Death Act compensates certain relatives of the Decedent for their

losses as a result of the Decedent's death.  *See* 42 Pa. Cons. Stat. §8301.  Under Pennsylvania

law, wrongful death beneficiaries are entitled to be compensated for monetary contributions the

decedent would have made to them during her lifetime, including any money for food, clothing,

shelter, transportation, medical expenses, gifts, insurance, education, entertainment, and

recreation.  Pa. Civ. Jury Ins. No. 7.180, Wrongful Death and Survival Action (5th ed. 2020).

Under the Wrongful Death Act, children of a decedent are also entitled to be compensated for

their deceased parent's guidance, teaching, training, advice, education, care, services, emotional support, and moral upbringing. *Id.* Also, significantly, Pennsylvania Courts have recognized the wrongful death act beneficiaries are entitled to the emotional and psychological loss suffered as a result of the death. *Rettger v. UPMC Shadyside*, 991 A.2d 915 (Pa.Super. 2010). Finally, wrongful death damages also include funeral, burial, and estate administration expenses.

21.     The Wrongful Death claims in this case are very significant and warrant allocation of the majority of the settlement proceeds. Brittany Ann Harbaugh is survived by her ███████████. Each of Ms. Harbaugh's children had a close relationship with their mother.

22.     Unlike the Wrongful Death Act, which provides compensation to the decedent's statutory beneficiaries, the Survival Action provide only damages that could have been recovered by the decedent. *See* 42 Pa. Cons. Stat. §8302. Damages under the Survival Act are limited to decedent's conscious pain and suffering and the probable earning during his life expectancy minus the probable cost of maintaining himself and deduction of the support provided to wrongful death beneficiaries. *Smith*, 709 F. Supp. 2d at 358; Pa. Civ. Jury Ins. No. 7.180.

23.     In this case, in relation to the Wrongful Death claim, the Survival Act damages are limited. The most significant component of survival action damages includes loss of future income of Britany Harbaugh minus her personal maintenance expenses and any contribution to the Wrongful Death beneficiaries. Ms. Harbaugh had a limited work history, mostly in lower wage positions. *See* Report of David Hopkins, attached hereto as Exhibit "D." Further, as result of her struggles with opiate dependence she had not worked in the year prior to her death. Moreover, much of Ms. Harbaugh's future earnings would have been contributed to either personal maintenance or to support for her children, which is appropriately included in the

5

wrongful apportionment. Similarly, Ms. Harbaugh had limited conscious pain and suffering. She spoke to her family on the telephone on October 1, shortly before her death and did not complain of pain or discomfort at that time. As seen on surveillance video at approximately 9:00 p.m. Ms. Harbaugh collapsed suddenly. According to medical responders she was not conscious after she collapsed. Accordingly, there is no factual basis to warrant a significant allocation of damages to Ms. Harbaugh's conscious pain and suffering and the damages under the Survival Act are significantly less than those attributable to the claims under the Wrongful Death Act.

24.    In summary, for the reasons set forth above, Plaintiffs respectfully request that the proposed settlement proceeds from Defendant PrimeCare of $1,000,000.00 be approved, allocated and distributed as follows:

| | | |
|---|---|---|
| **GROSS SETTLEMENT AMOUNT** | | **$1,000,000.00** |
| a. | Kline & Specter, P.C.<br>(Attorney's fee – 40%) | $   400,000.00 |
| b. | Kline & Specter, P.C<br>(Reimbursement of litigation costs) | $     50,774.00 |
| **NET DISTRIBUTION** | | **$  554,225.00** |
| | Wrongful Death Act Proceeds (60%) | |
| | To:  ▮▮▮▮▮▮▮▮▮▮ | $ 109,845.00 |
| | ▮▮▮▮▮▮▮▮▮▮ | $ 109,845.00 |
| | ▮▮▮▮▮▮▮▮▮▮ | $ 109,845.00 |
| | Survival Act Proceeds (40%) | |
| | To:   Nina M. Harbaugh,<br>Administrators of the Estate of<br>Brittany Ann Harbaugh, deceased | $ 219,691.00 |

25.    Defense counsels have no opposition to this Motion.

6

**WHEREFORE**, for all of the foregoing reasons, Plaintiff respectfully requests that the Court enter the attached Order approving the settlement and distribution of proceeds of the above-captioned case in the manner set forth herein.

Respectfully submitted,

Date: <u>November 17, 2022</u>          BY:     *David K. Inscho*
                                          DAVID K. INSCHO, ESQUIRE
                                          MICHAEL A. CAVALIERE, ESQUIRE
                                          KLINE & SPECTER, P.C.
                                          1525 Locust Street
                                          Philadelphia, PA 19102
                                          215-772-1000
                                          Attorneys for Plaintiff

## VERIFICATION OF PLAINTIFF IN SUPPORT OF MOTION
## PURSUANT TO LOCAL RULE 41.2 TO APPROVE SETTLEMENT
## AND DISTRIBUTION OF PROCEEDS

1.      I am Plaintiff Nina Harbaugh, Administrator of the Estate of Britany Harbaugh, deceased.  I am also the legal guardian of Brittany's three minor children.

2.      I am the Plaintiff in the above-captioned action and hereby verify that the statements made in the foregoing Motion are true and correct to the best of my knowledge, information and belief.

3.      I am represented by David Inscho, Esquire, and Michael A. Cavaliere, Esquire, of the law firm of Kline & Specter, P.C.

4.      I am completely and totally satisfied with my legal representation in this litigation, and I understand this Motion is for approval of the settlement against Defendant PrimeCare **only**.

5.      I approve of the settlement of this action in the amount of $1,000,000.00, and the distribution of proceeds, without reservation.

6.      I understand the statements made in the Motion are subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to authorities.

Dated:  11/16/2022

_____
NINA HARBAUGH

**CERTIFICATE OF SERVICE**

I, David K. Inscho, Esquire, hereby certify that on this date a copy of Plaintiff's

Unopposed Motion Pursuant to Local Rule 41.2 to Approve Settlement and Distribution of

Proceeds was served upon the following via the electronic mail:

Jeffrey M. Scott, Esquire
Jeffrey M. Kolansky, Esquire
Kerri E. Chewning, Esquire
Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, Pennsylvania 19103-7393
***Attorney for County of Bucks***

John R. Ninosky, Esquire
Marshall Dennehey Warner Coleman & Goggin
100 Corporate Center, Drive, Suite 201
Camp Hill, PA 171011
***Attorney for PrimeCare Medical, Inc.***

**KLINE & SPECTER, P.C.**

Date: <u>November 17, 2022</u>          By:     *David K. Inscho*
                                                      DAVID K. INSCHO, ESQUIRE
                                                      Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NINA M. HARBAUGH, AS ADMINISTRATOR | : | |
| of the ESTATE OF BRITTANY ANN | : | |
| HARBAUGH, DEC'D | : | |
| Plaintiff, | : | **NO: 2:20-cv-01685-MMB** |
| V. | : | |
| | : | |
| COUNTY OF BUCKS, et al. | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2022, Pursuant to Local Rule 41.2 and upon consideration of the Motion to Approve Settlement and Distribution of Proceeds, and any responses thereto, it is hereby **ORDERED** and **DECREED** that the Motion to Approve Settlement and Distribution of Proceeds in the amount of $1,000,000.00 is hereby **GRANTED**.

**IT IS FURTHER ORDERED** and **DECREED** that the gross settlement proceeds of $1,000,000.00 be distributed as follows:

| | | |
|---|---|---:|
| **GROSS SETTLEMENT AMOUNT** | | **$1,000,000.00** |
| a. | Kline & Specter, P.C. (Attorney's fee – 40%) | $ 400,000.00 |
| b. | Kline & Specter, P.C (Reimbursement of litigation costs) | $ 50,774.00 |
| **NET DISTRIBUTION** | | **$ 554,225.00** |
| | Wrongful Death Act Proceeds (60%) | |
| | To: ████████████ | $ 109,845.00 |
| | ████████████ | $ 109,845.00 |
| | ██████████ | $ 109,845.00 |

Survival Act Proceeds (40%)

> To: Nina M. Harbaugh,
> Administrators of the Estate of
> Brittany Ann Harbaugh, deceased          $ 219,691.00

**BY THE COURT**:

_____
**Michael Baylson**
**U.S. District Court Judge of the E.D.Pa.**

---
[1]To be deposited by counsel into an interest-bearing savings account or savings certificate in a federally insured bank or savings institution not to exceed the insured amount, IN THE NAME OF THE MINOR, titled and restricted that funds may not be withdrawn before minor attains majority or upon prior Order of Court.

# EXHIBIT "A"

Commonwealth of Pennsylvania

Delaware County                    } ss:

I, MARY J. WALK, Register for the Probate
of Wills and Granting Letters Testamentary
and of Administration in and for County of
Delaware, in the Commonwealth of
Pennsylvania,  do hereby Certify that on
**May 17,  2019**
**NINA M. HARBAUGH**

was duly and legally appointed as **Administratrix** of the estate of

**BRITTANY ANN HARBAUGH**

who died **October 01,  2018** late of **Upper Darby Township**, Delaware
County, Pennsylvania, and has been duly qualified as such according to
law as can be verified by reference to the records in my office, and that the
letters have not been revoked.

WITNESS my hand and seal of office, at Media in the County aforesaid, on
May 17, 2019.
**File No. 2319-1317**

_Mary J. Walk_
Register of Wills

# EXHIBIT "B"



**pennsylvania**
DEPARTMENT OF HUMAN SERVICES

June 1, 2020

KLINE AND SPECTER, P.C.
JILL STEWART
1525 LOCUST STREET
PHILADELPHIA PA  19102

> Re: Brittany Harbaugh
> CIS #: 360154038
> Incident Date: 10/01/2018

Dear Ms. Stewart:

Pursuant to your request for a statement of claim, the Department of Human Services (DHS), Third Party Liability (TPL), Casualty Unit, has reviewed the information you provided regarding the above-referenced incident.

It has been determined that DHS has no medical and/or cash assistance claim for this incident at this time.

If you have any questions, please feel free to contact me.

Sincerely,

Scott A. Schneider
Claims Investigation Agent
717-409-3741
717-772-6553 FAX

# EXHIBIT "C"

## ESTATE OF BRITTANY ANN HARBAUGH'S
## LEGAL COSTS AND EXPENSES OF KLINE & SPECTER

| | |
|---|---|
| Bucks County Coroner's Office | $200.00 |
| CIOX (Doylestown Hospital) | $87.65 |
| PrimeCare Medical, Inc. | $104.67 |
| Golkow, Inc. | $18,172.74 |
| Hughes, Albright, Foltz & Natale | $157.00 |
| William Santoro, MD | $14,750.00 |
| Forensic Pathology & Legal Medicine | $4,675.00 |
| Ross MacDonald, MD | $6,460.00 |
| David Hopkins, MAAA | $3,4745.00 |
| Filing/Service/Court | $469.00 |
| Copies/Color/Video | $244.00 |
| Legal Research | $14.85 |
| Postage and Federal Express | $375.16 |
| Budget Conferencing | $742.36 |
| Pennsylvania Bureau of Vital Records (Birth Certificates for children) | $188.00 |
| Kish Funeral Home (Death Certificate) | $68.00 |
| Delaware County Orphans Court Fees for Estate of Brittany Harbaugh | $225.57 |
| Travelers Insurance Company (Estate bond) | $100.00 |
| Publication of Estate | $235.00 |

**TOTAL KLINE & SPECTER COSTS:** **$50,774.00**

# EXHIBIT "D"

**DAVID L. HOPKINS, ASA, MAAA**

ACTUARIAL – ECONOMIC CONSULTING
801 PINE HILL ROAD
KING OF PRUSSIA, PA 19406
PHONE (610) 768-7180 • FAX (610) 768-7184

## BRITTANY ANN HARBAUGH

Loss of Earning Capacity,
Fringe Benefits &
Household Services

Prepared for:

David K. Inscho, Esq.
**KLINE & SPECTER, P.C.**
1525 Locust Street
Philadelphia, Pa 19102

Prepared by:

David L. Hopkins, ASA, MAAA
November 23, 2021

Brittany Ann Harbaugh

## BACKGROUND

Brittany Ann Harbaugh was born on September 19, 1990. Therefore, she was 28.0 years of age at the time of her death on October 1, 2018. It has been indicated that Ms. Harbaugh died as the result of complications from drug withdrawal at the Bucks County Correctional Facility.

Prior to her death, Ms. Harbaugh was a homemaker and mother. Ms. Harbaugh graduated from Belford High School in 2009. She last worked as a private personal care aide/home health aide in 2016-2017. Ms. Harbaugh was previously employed with Walmart, Dollar General, Auntie Anne's, and Towne Talk Newspaper.

The names and dates of birth of the family members are as follows:

| Name | Relationship | Date of Birth |
|------|--------------|---------------|
|      |              |               |

## LIFE EXPECTANCY

As indicated previously, Ms. Harbaugh was 28.0 years of age at the time of her death on October 1, 2018. The normal life expectancy for a female of this age would be 54.1 years, based upon the 2018 U.S. Life Tables, as prepared by the U.S. Department of Health and Human Services. Adding the life expectancy of 54.1 years to the age at death of 28.0 years would indicate an expected normal (average) life span of 82.1 years of age.

Had she not died, Ms. Harbaugh would have currently been 31.2 years of age. Therefore, approximately 50.9 years would have currently remained in the normal life expectancy period for Ms. Harbaugh, had she not died.

Brittany Ann Harbaugh

## WORKLIFE EXPECTANCY

As indicated previously, Ms. Harbaugh was a high school graduate and she was previously employed as a Personal Care/Home Health Aide (HHA). She also previously worked as a cashier and retail salesperson. On this basis, calculations are provided in this report based upon the average earnings levels as a cashier, retail salesperson, or Personal Care/Home Health Aide (HHA), as well as the average earnings for a female High School Graduate, and consideration is made for a re-entry to the labor market approximately two years following the date of Ms. Harbaugh's death (Ms. Harbaugh's age 30). Therefore, the losses would also include a small amount of past lost earning capacity from September 2020 to the current date.

Based upon worklife information and statistics published by the U.S. Department of Labor, and also Vocational Econometrics, consideration is made in this report for a future worklife period (on average) for Ms. Harbaugh through age 50, age 55, age 60, age 65, or age 70. It should be noted that Ms. Harbaugh's age for normal retirement under the Social Security System would have been age 67.

Based on work (on average) through retirement at age 50, the future worklife expectancy period would be 18.8 years. Based upon work through retirement at age 55, the future worklife expectancy period would be 23.8 years. Based upon work through retirement at age 60, the future worklife expectancy period would be 28.8 years. Based upon work (on average) through retirement at age 65, the future worklife expectancy period would be 33.8 years. Based on work through retirement at age 70, the future worklife expectancy period would be 38.8 years.

## LOST EARNING CAPACITY

The future lost earning capacity is measured for the duration of the future worklife expectancy period based upon the average level of earnings for the two alternatives as described previously: cashier, retail salesperson, or Personal Care/Home Health Aide (HHA), as well as a High School Graduate, and also the average of this earnings range.

According to earnings information from *Occupational Employment Statistics*, published by the U.S. Department of Labor, the average earnings levels in 2020 for Home Health Care and Personal Care Aides in the Philadelphia area of Pennsylvania were $26,950 per year. The average earnings for cashiers were $24,480; the average earnings for retail salespersons were $31,940 per year. Reference is also made to average earnings information (2019 level of earnings) from the publication, *Consumer Income*, published by the U.S. Department of Commerce, Bureau of the Census, which provides the average earnings by educational attainment (delineated by age groupings).

(Continued)

Brittany Ann Harbaugh

## LOST EARNING CAPACITY
(Continued)

An allowance is made for increases in the above-described average earnings levels at the rate of 3½% per year, for that has been the average rate of increase for full time workers' earnings in the U.S. labor market over the past several years. This would indicate a lower level of annual 2021 earnings (cashier) of $25,337 per year. The projected current range of average earnings as of 2021 for the occupations and the educational level described previously would be approximately as follows:

|  | Cashier | Average of Range | High School Diploma |
|---|---|---|---|
| Ages 25 to 34......... | $25,337 | $32,593 | $39,848 |
| Ages 35 to 44......... | $25,337 | $35,016 | $44,694 |
| Ages 45 to 54......... | $25,337 | $35,265 | $45,192 |
| Ages 55 to 64......... | $25,337 | $37,559 | $49,780 |
| Ages 65 to 69......... | $25,337 | $34,264 | $43,191 |

The lost earning capacity is calculated by making an allowance for future increases in earnings due to inflation and productivity. However, the future lost earning capacity must also be reduced to its present value at an appropriate rate of interest. The future earnings amounts above by educational attainment already include some measure of future productivity through the increased earnings levels at later ages. On this basis, and using rates of growth in earnings that are representative of average rates of growth in earnings in the U.S. labor market, and using interest rates that reflect current interest rates in the U.S. economy, the allowance for future growth in earnings coupled with the reduction of future earnings to their present value would be approximately equivalent to a reduction to present worth at 0% to 2½% net interest for present value. On this basis, the present value of the lost earning capacity would be as follows:

| 0% Net Interest | Cashier | Average of Range | High School Diploma |
|---|---|---|---|
| Retirement at age 50........... | $506,740 | $689,450 | $872,140 |
| Retirement at age 55........... | $633,425 | $865,775 | $1,098,100 |
| Retirement at age 60........... | $760,110 | $1,053,570 | $1,347,000 |
| Retirement at age 65........... | $886,795 | $1,241,365 | $1,595,900 |
| Retirement at age 70........... | $1,013,480 | $1,412,685 | $1,811,855 |

| 2½% Net Interest | Cashier | Average of Range | High School Diploma |
|---|---|---|---|
| Retirement at age 50........... | $416,146 | $564,161 | $712,159 |
| Retirement at age 55........... | $491,992 | $669,726 | $847,441 |
| Retirement at age 60........... | $559,029 | $769,100 | $979,150 |
| Retirement at age 65........... | $618,280 | $856,932 | $1,095,561 |
| Retirement at age 70........... | $670,649 | $927,753 | $1,184,832 |

Brittany Ann Harbaugh

## PERSONAL MAINTENANCE EXPENSES

It is necessary to make a deduction from the amount of the lost earning capacity to represent the amount of the lost earnings that Ms. Harbaugh would have allocated toward the payment of her own personal maintenance expenses.

Personal maintenance expenses are the (modest and reasonable) necessary and economical living expenses of the deceased, had she not died. The personal maintenance expenses do not include the entire amount of the expenditures for Ms. Harbaugh, but only the supply of the necessaries of life – sustenance, subsistence, livelihood and support.

Based upon information from tables of annual consumption budgets for selected family types, prepared by the U.S. Department of Labor, a conservative amount to use for personal maintenance expenses would be as follows:

| | |
|---|---|
| Cashier…………………………................. | 49% |
| Average of Range............................................ | 43% |
| High School Diploma..................................... | 38% |

After deducting for personal maintenance expenses, the net lost earning capacity would be as follows:

| *0% Net Interest* | Cashier | Average of Range | High School Diploma |
|---|---|---|---|
| Retirement at age 50……….. | $258,437 | $392,987 | $540,727 |
| Retirement at age 55……….. | $323,047 | $493,492 | $680,822 |
| Retirement at age 60……….. | $387,656 | $600,535 | $835,140 |
| Retirement at age 65……….. | $452,265 | $707,578 | $989,458 |
| Retirement at age 70……….. | $516,875 | $805,230 | $1,123,350 |

*2½% Net Interest*

| | Cashier | Average of Range | High School Diploma |
|---|---|---|---|
| Retirement at age 50……….. | $212,234 | $321,572 | $441,539 |
| Retirement at age 55……….. | $250,916 | $381,744 | $525,413 |
| Retirement at age 60……….. | $285,105 | $438,387 | $607,073 |
| Retirement at age 65……….. | $315,323 | $488,451 | $679,248 |
| Retirement at age 70……….. | $342,031 | $528,819 | $734,596 |

-4-

Brittany Ann Harbaugh

## LOST FRINGE BENEFITS

It is appropriate to make a calculation for the value of lost benefits in connection with the amount of lost earning capacity for Ms. Harbaugh. Such fringe benefits would include the value of employer contributions to Social Security, retirement plans, and other fringe benefits.

According to information and statistics published by the U.S. Department of Labor, the U.S. Chamber of Commerce, and the Employee Benefit Research Institute, the average value of employee fringe benefits in the U.S. labor market ranges from 20% to more than 30% of the level of the employees' earnings. For purposes of this report, the lost fringe benefits are conservatively measured at 20% of the level of lost earning capacity for Ms. Harbaugh.

The lost fringe benefits are measured for the duration of the worklife expectancy period, utilizing the net interest rate method as described previously. On this basis, the present value of the lost fringe benefits would be as follows:

| 0% Net Interest | Cashier | Average of Range | High School Diploma |
|---|---|---|---|
| Retirement at age 50……….. | $101,348 | $137,890 | $174,428 |
| Retirement at age 55……….. | $126,685 | $173,155 | $219,620 |
| Retirement at age 60……….. | $152,022 | $210,714 | $269,400 |
| Retirement at age 65……….. | $177,359 | $248,273 | $319,180 |
| Retirement at age 70……….. | $202,696 | $282,537 | $362,371 |

| 2½% Net Interest | | | |
|---|---|---|---|
| Retirement at age 50……….. | $83,229 | $112,832 | $142,432 |
| Retirement at age 55……….. | $98,398 | $133,945 | $169,488 |
| Retirement at age 60……….. | $111,806 | $153,820 | $195,830 |
| Retirement at age 65……….. | $123,656 | $171,386 | $219,112 |
| Retirement at age 70……….. | $134,130 | $185,551 | $236,966 |

Brittany Ann Harbaugh

## **LOST HOUSEHOLD SERVICES**

It is also appropriate to make a calculation for the value of lost household services as the result of Ms. Harbaugh's death. Such lost household services would include the value of lost child care, cooking, cleaning, and other related household chores.

According to information from Time Use Surveys published by the U.S. Department of Labor and the American Economic Association, an employed homemaker would spend an average of approximately 20 hours or more per week providing the normal level of services for her household. A non-employed homemaker spends 40 hours or more on household services. For purpose of this report, the lost household services are conservatively measured beginning at age 30 based upon an average of 20 hours of lost services per week through the time that the youngest child reaches age 18 (a future period of 9.2 years).

The lost household services are best valued at their replacement cost utilizing an appropriate value for the lost services. An appropriate value to use would currently be $24 per hour, based upon earnings information for similar types of household workers, as published by the Genworth Financial (Cost of Care Surveys) and the U.S. Department of Labor in its Occupational Employment Statistics and other regional earnings data. However, in order to be conservative, the lost household services are calculated using an hourly rate of $20 per hour (approximately equal to the current level of earning capacity in 2021 for female high school graduates at Ms. Harbaugh's age level). On this basis, the total past lost household services from September 2020 (age 30) through the current date would be $24,528.

The future lost household services are measured through the time that Ms. Harbaugh's ▇▇▇▇ would reach age 18 (a future period of 9.2 years). The current value of the lost household services would be $20,800 per year. Consideration is made for future inflationary increases that are both lower and higher than average net investment returns. Therefore, the future lost household services are calculated at 2½% net interest for present value, 0% net interest and 0% net growth, as well as 2½% net growth for present value. On this basis, the present value of the future lost household services would be as follows:

| | |
|---|---|
| 2½% Net Interest For Present Value............... | $173,303 |
| 0% Net Interest/0% Net Growth.................... | $191,360 |
| 2½% Net Growth For Present Value............. | $212,198 |

-6-

Brittany Ann Harbaugh

## SUMMARY

### Lost Earning Capacity and Fringe Benefits*
*The Summary figures below include the total values of the Lost Earning Capacity (net) and the Lost Fringe Benefits.

| 0% Net Interest | Cashier | Average of Range | High School Diploma |
|---|---|---|---|
| Retirement at age 50………. | $359,785 | $530,877 | $715,155 |
| Retirement at age 55………. | $449,732 | $666,647 | $900,442 |
| Retirement at age 60………. | $539,678 | $811,249 | $1,104,540 |
| Retirement at age 65………. | $629,624 | $955,851 | $1,308,638 |
| Retirement at age 70………. | $719,571 | $1,087,767 | $1,485,721 |

*2½% Net Interest*

| | | | |
|---|---|---|---|
| Retirement at age 50………. | $295,463 | $434,404 | $583,971 |
| Retirement at age 55………. | $349,314 | $515,689 | $694,901 |
| Retirement at age 60………. | $396,911 | $592,207 | $802,903 |
| Retirement at age 65………. | $438,979 | $659,837 | $898,360 |
| Retirement at age 70………. | $476,161 | $714,370 | $971,562 |

### Lost Household Services*
*The Summary figures below include the total value of the Past Lost Household Services and the Future Lost Household Services

| | |
|---|---|
| 2½% Net Interest For Present Value…………. | $197,831 |
| 0% Net Interest/0% Net Growth……………… | $215,888 |
| 2½% Net Growth For Present Value………….. | $236,726 |

-7-